IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| OSCAR GABRIEL LOPEZ SANTOS,   )<br>)<br>Petitioner,   )<br>)<br>v.   )<br>)<br>MICHAEL CLESCERI,[1]   )<br>*Chief of Corrections, McHenry County Jail*,   )<br>)<br>Respondent.   ) | Case No. 3:20-cv-50349<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

The government must detain certain criminal noncitizens pending their removal proceedings under 8 U.S.C. § 1226(c). Oscar Gabriel Lopez Santos (Lopez Santos), who has been granted asylum twice by an immigration judge, was detained under that statute and has now been in custody of Immigration and Customs Enforcement (ICE) for eighteen months. He has petitioned this Court under 28 U.S.C. § 2241 for an immediate bond hearing pursuant to 8 U.S.C. § 1226(a) because his detention has become unreasonable and the February 10, 2021, decision of the Board of Immigration Appeals (BIA) remanding the case back to the immigration judge indicates that a final order of removal is not forthcoming in the near future. For the reasons stated below, this Court orders a bond hearing within thirty days, at which the government must justify Lopez Santos's continued detention by clear and convincing evidence.

---

[1] Chief Michael Clesceri is substituted as Respondent by agreement of the parties and under Fed. R. Civ. P. 25(d).

1

## BACKGROUND

Lopez Santos is a citizen of Honduras who entered the United States seeking asylum in December 2014. Dkt. 48, at 2.[2] His mother came to the United States from Honduras when he was five years old, leaving him in the care of some relatives. Dkt. 48-2, at 9. He was subject to severe physical abuse by his relatives, and by age twelve Lopez Santos lived on the streets or with friends. *Id.* He was coerced into joining a gang and was left with no way out. *Id.* Upon his arrival in the United States at age fourteen, Lopez Santos was immediately placed in detention as an unaccompanied minor under the custody of the Office of Refugee Resettlement (ORR). Dkt. 48, at 2. In October 2016, while still in ORR detention, Lopez Santos filed a Form I-589 Application for Asylum and Withholding of Removal. *Id.* On April 17, 2017, United States Customs and Immigration Services approved his petition for Special Immigrant Juvenile Status, which could provide him with a basis to seek lawful permanent residency in the United States. *Id.* at 4. Also that year, in a separate proceeding, Lopez Santos filed a petition for a writ of habeas corpus in the Western District of Virginia. *Id.* at 2. On May 16, 2017, Immigration Judge Bryant found that Lopez Santos was persecuted based on his membership in a "cognizable particular social group" and granted him asylum; the Department of Homeland Security (DHS) immediately appealed this decision to the BIA. *Id.* And on June 1, 2017, the district court granted his writ of habeas corpus and released Lopez Santos, who was then seventeen years old, from ORR detention into his mother's care and custody. *Id.*; *see also Santos v. Smith*, 260 F. Supp. 3d 598 (W.D. Va. 2017). In May 2018, the BIA upheld Immigration Judge Bryant's findings, but

---

[2] The parties provided the Court with several pages of stipulated facts. The Court thanks the parties for their ability to reach agreement on these facts.

remanded, ordering him to address whether Lopez Santos's turning eighteen years old affected his eligibility for asylum. *Id.*

While waiting for the decision on remand, Lopez Santos pled guilty to misdemeanor possession of marijuana on July 1, 2019. *Id.* During that same time, his girlfriend's mother took out a protective order against him. Dkt. 1, ¶ 23. Without fully understanding what it meant, he violated the protective order by visiting his ex-girlfriend and infant daughter, resulting in his being taken into criminal custody at the Boone County Jail in Burlington, Kentucky, on September 14, 2019. *Id.*; Dkt. 48, at 2. Lopez Santos served three days in jail for that violation. *Id.* Immediately following the completion of his three-day sentence, Lopez Santos was taken into ICE custody pursuant to 8 U.S.C. § 1226(c)(1)(A) because of his prior conviction for possession of marijuana, a controlled substance. Dkt. 48, at 3. According to Lopez Santos's testimony, he served no time incarcerated for the marijuana possession offense.

Since September 20, 2019, Lopez Santos has been in ICE custody in facilities in Kentucky and Illinois. *Id.* He is currently detained in McHenry County Jail in Woodstock, Illinois, in a unit with other detainees awaiting their civil immigration proceedings. *Id.* at 4. In addition to these ICE detainees, McHenry County Jail also houses pretrial criminal detainees and criminals serving sentences less than one year. *Id.*

Lopez Santos was granted asylum by an immigration judge for a second time on January 14, 2020. *Id.* This time, Immigration Judge Bryant granted asylum on two independent grounds: (1) asylum because of the persecution he suffered based on his membership in a particular social group and (2) humanitarian asylum. *Id.* DHS appealed this decision to the BIA, and while awaiting that decision, Lopez Santos filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 with this Court. *Id.*; *see* Dkt. 1. This Court set an evidentiary hearing on the matter

for February 12, 2021. On February 10, 2021, the BIA again remanded the decision to Immigration Judge Bryant for "supplemental factfinding." *Id.* at 3. Because of this remand, the parties jointly stipulated to the fact that "it could be many months or years before [Lopez Santos's] removal proceedings are resolved." *Id.*

On February 12, 2021, this Court heard testimony and arguments concerning Lopez Santos's as-applied Fifth Amendment due process challenge to his detention under § 1226(c). This Court recited a list of non-exhaustive factors it was considering, including duration of the detention, likelihood of continued confinement, reasons for delay, and conditions of confinement. *See German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). Respondent argued that the Court would need to consider the safety of the community if the court was considering Lopez Santos's outright release. *See* Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. Lopez Santos clarified that he was only seeking an immediate bond hearing and not outright release at this time. Lopez Santos testified under oath to dates and events underlying his immigration proceedings, including details about the abuse and persecution he faced in Honduras before seeking asylum in the United States, as well as his mental health while in custody. For Respondent, McHenry County Sheriff's Office Administrative Lieutenant Dave Wienke testified to the procedures and circumstances at Petitioner's current detention facility, the McHenry County Jail, including safeguards in place to limit the spread of COVID-19.

## DISCUSSION

**I.  This Court Has Jurisdiction over Petitioner's Fifth Amendment Due Process Challenge to His Civil Detention.**

Federal courts have jurisdiction to hear a civil detainee's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). *Zadvydas v. Davis,* 533 U.S. 678, 687 (2001); *see also Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) (noting that the remedy of habeas corpus is

4

often employed "to effect discharge from any confinement contrary to the Constitution or fundamental law," even when the confinement was initially reasonable).

The Due Process Clause of the Fifth Amendment provides that no citizen or noncitizen[3] "shall . . . be deprived of life, liberty, or property . . . without due process of law." U.S. Const. amend. V; *see also Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas,* 533 U.S. at 693 ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). And due process requires that these noncitizens have "a meaningful opportunity to be heard." *Rodriguez Galicia*, 422 F.3d at 583 (quoting *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir.1999)).

## II.  Mandatory civil detention under § 1226(c) is a significant deprivation of Liberty.

The Immigration and Nationality Act is codified at 8 U.S.C. § 1101 et seq. The Act gives the government discretion to "issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (citing 8 U.S.C. § 1226(a)). Further, the government "may release [an] alien on bond of at least $1,500 . . . or conditional parole," except those detained pursuant to

---

[3] Excludable noncitizens ("aliens") are considered "persons" for the purposes of Due Process. *See Plyler v. Doe*, 457 U.S. 202, n.10 (1982) ("[N]o plausible distinction with respect to Fourteenth Amendment jurisdiction can be drawn between resident aliens whose entry into the United States was lawful, and resident aliens whose entry was unlawful.") and *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) ("The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It says: Nor shall any State deprive any person of life, liberty, or property without due process of law[.]") (internal quotations omitted). Respondent rightfully notes that there may be a distinction between the amount of process due for lawful permanent residents as compared to others and that this is an open issue. Respondent's counsel was not misstating the law when he made this argument at the hearing. But for purposes of this decision, the Court finds that Lopez Santos is entitled to a bond hearing at which the government must establish by clear and convincing evidence that Lopez Santos is a flight risk or danger to the community.

§ 1226(c). 8 U.S.C. § 1226(a)(2). Section 1226(c) states that the government "shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title . . . when the alien is released." 8 U.S.C. § 1226(c)(1)(A). The relevant triggering offenses include "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(1)(II).[4] Although the Act permits release on bond under certain circumstances, a possession of a controlled substance conviction effectively removes the possibility of bond for a noncitizen in civil detention who is awaiting a final order of removal. *Id.* at § 1226(c)(2). This is a policy decision made by the other branches of government that the Court cannot question absent a constitutional infringement.

To be clear, "civil detention for any purpose constitutes a significant deprivation of liberty." *Addington v. Texas*, 441 U.S. 418, 425 (1979) (finding unreasonable civil detention of mentally disabled person violated Fifth Amendment due process). This includes civil detention of noncitizens. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). Because a "statute permitting indefinite detention of an alien would raise a significant constitutional problem," the *Zadvydas* Court read an implicit limitation into an immigration statute that, on its face, mandated indefinite detention. *Zadvydas*, 533 U.S. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). But seventeen years later, the Supreme Court retreated from its earlier reasoning in *Zadvydas*. In *Jennings*, the court rejected the notion

---

[4] *Compare* with 8 U.S.C. § 1227(a)(2)(B)(i): "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), **other than a single offense involving possession for one's own use of 30 grams or less of marijuana**, is deportable." (emphasis added). The difference between sections 1227 and 1226 depends on the classification of the noncitizen—the former applies after admission and the latter applies before and while pending admission. *See Aguilera-Montero v. Mukaskey*, 598 F.3d 1248, 1253 (9th Cir. 2008) (finding deportable noncitizen detained under § 1227(a)(2)(B)(i) not subject to inadmissibility waiver).

6

proffered by the Ninth Circuit that due process statutorily required a bond hearing every six months to justify continued detention under § 1226(c). *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). However, the *Jennings* Court declined to reach the merits of the Fifth Amendment Due Process challenge to mandatory detention under § 1226(c). *Id.* at 846. Instead, it relied on earlier decisions that suggested detention duration ranging from one to six months, leading the Supreme Court to conclude that mandatory detention under § 1226(c) did not have an implied limit. *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 529 (2003) (finding that noncitizens detained under § 1226(c) were detained for a median time of 30 days—and if the decision was appealed to the BIA, an average time of four months) and *Zadvydas,* 533 U.S. at 697 (finding that an implicit limit on indefinite detention for noncitizens subject to final removal orders after a six-month period of confinement were due an individualized bond hearing).[5]

### III. Due Process Requires an Individualized Bond Hearing When Detention Becomes Unreasonable.

Many courts have held that Fifth Amendment Due Process limits unreasonable detention under § 1226(c), and when the particular facts establish that the detention has become unreasonable, the Due Process clause affords the detainee an individualized bond hearing. *German Santos*, 965 F.3d at 210 ("due process affords aliens detained under § 1226(c) a bond hearing once detention becomes unreasonable"); *Hall v. INS*, 253 F. Supp. 2d 244 (D.R.I. 2003) (requiring a bond hearing when civil detention lasted over two years); *De Oliveira Viegas v.*

---

[5] In 2003, the Court stated: "The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Demore*, 538 U.S. at 529 (internal citations omitted). For context, not decisional purposes, it should be noted that there has been a significant increase in the caseload for recent years. In 2020, the BIA completed 33,973 appeals, which was the most completed in a single year. EOIR data shows over 82,000 appeals currently pending at the BIA. EOIR Adjudication Statistics, https://www.justice.gov/eoir/page/file/1248501/download (Jan. 7, 2021).

*Green*, 370 F. Supp. 3d 443 (D.N.J. 2019) (requiring a bond hearing when civil detention lasted fifteen months); *Smith v. Barr*, 444 F. Supp. 3d 1289 (N.D. Okla. 2020) (requiring a bond hearing when civil detention lasted over thirty months); *Minto v. Decker*, 108 F. Supp. 3d 189 (S.D.N.Y. 2015) (requiring a bond hearing when civil detention lasted twelve months). In *German Santos*, the reasonableness of detention was based on the weighing of four non-exhaustive factors. *Id.* at 211 (finding that duration of detention was the most important factor); *see also Chairez-Castrejon v. Bible*, 188 F. Supp. 3d 1221, 1225-26 (D. Utah 2016) (collecting cases and discussing different approaches to determining the reasonableness of civil detention of a noncitizen).

Although the Seventh Circuit has not decided this exact issue on the merits, it has found that a noncitizen who has a negligible chance of remaining in the United States does not possess a right to remain at large while the immigration proceedings are pending. *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (balancing the interests under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). To be sure, other courts outside the Seventh Circuit have questioned the *Parra* decision. *Hoang Minh Ly v. Hansen*, 351 F.3d 263, 269 (6th Cir. 2003) (asserting that *Parra* was overruled by *Zadvydas*); *Phu Chan Hoang v. Comfort*, 282 F.3d 1247, 1255-56 (10th Cir. 2002); *Gashaj v. Garcia*, 234 F. Supp. 2d 661, 665 (W.D. Tex. 2002). But this Court is not at liberty to question *Parra*. *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994). Nevertheless, the Seventh Circuit, itself, has noted the tension in the case law. *Gonzalez v O'Connell*, 355 F.3d 1010, 1020 (7th Cir. 2004) ("Before *Kim*, but after *Parra*, several district courts in our circuit held that § 1226(c) is unconstitutional as applied to detainees who have a good-faith claim that they will ultimately be permitted to remain in the country. . . It is not necessary, however, for this court to reach this important issue in this case."). Although this

8

Court is bound by the holding of *Parra*, that case is both factually and legally distinguishable from these types of cases, as other district courts have found. *See Forbes v. Perryman*, 222 F. Supp. 2d 1076, 1079 (N.D. Ill. 2002).[6]

In the absence of controlling Seventh Circuit precedent, this Court adopts the reasoning and analysis of the Third Circuit in *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). Other courts outside the Third Circuit have similarly adopted the analysis and factors identified in *German Santos*. *See, e.g.*, *M.D.F. v. Johnson*, 20-CV-0829, 2020 U.S. Dist. LEXIS 227595 (N.D. Tex. Dec. 3, 2020). The non-exhaustive list of factors identified in *German Santos* include the duration of detention, the likelihood of continued detention, the reasons for delay, and the conditions of confinement. *German Santos*, 965 F.3d at 212-13. Recognizing the fact-intensive inquiry required in these cases, other courts have identified additional factors, including whether the petitioner has asserted defenses to removal, whether the

---

[6] The Court notes that *Parra* was before the Seventh Circuit on a jurisdictional question, not on the merits of a due process challenge to detention. In *Parra*, the trial court dismissed Parra's petition for habeas corpus, asserting lack of jurisdiction under § 1226(e); the Seventh Circuit reversed, finding that § 1226(e) only foreclosed certain types of challenges, not including a habeas petition under § 2241. *Parra*, 172 F.3d. at 957. But the court didn't end the discussion there. Finding a remand "unnecessary," the court took it upon itself to determine that the petitioner's claim would fail on the merits because "[p]ersons subject to § 1226(c) . . . have little hope of clemency. (One is tempted to say 'no' hope, but life is full of surprises, and a last-minute amendment of the immigration laws or change in policy has kept many an immigrant in this country. For current purposes 'little' hope will do.)." *Id.* at 958. Further, the court reasoned that "[a]n alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Id.* Parra was detained under § 1226(c) after a conviction for aggravated criminal sexual assault, and he did not have any basis for asylum. *Id.* at 956. Importantly, the remedy Parra sought through his habeas petition was outright release pending his immigration proceedings. *Id.* at 956 ("Parra asks us for release pending appeal of that decision. . ."). Again, tellingly, the Seventh Circuit stated, "A criminal alien who insists on *postponing the inevitable* has no constitutional right to *remain at large* during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Id* at 958 (emphasis added). Here, Lopez Santos has a basis for asylum (and was granted asylum twice by an immigration judge), and his underlying conviction triggering detention under § 1226(c) was possession of marijuana, which has been decriminalized in many states. He does not possess "little hope of clemency," nor does he have "the keys in his pocket," because returning to Honduras may lead to his torture and death. *See* Dkt. 48-2, at 11-12. Critically, Lopez Santos is not seeking to be free at large during the pendency of his immigration proceedings. Instead, he is seeking a hearing under the Due Process clause of the Fifth Amendment. There is a fundamental difference between seeking release and seeking an impartial hearing to determine if release is appropriate.

9

time in detention will exceed or has exceeded the time petitioner has spent incarcerated for the underlying crime that made petitioner removable, and the nature of the crime petitioner committed. *Hylton v. Decker*, 20 cv 5994, 2020 U.S. Dist. LEXIS 220506, at *6-7 (S.D.N.Y. Nov. 24, 2020).

Additionally, although noncitizen detainees typically bear the burden of proof at immigration bond proceedings to establish that they are neither a danger to the community nor a flight risk, *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009), this Court is persuaded that after a finding that the noncitizen's detention has become unreasonable, the government must show by clear and convincing evidence that the noncitizen is either a danger or a flight risk. Dkt. 53, at 1; *see, e.g.*, *German Santos*, 965 F.3d at 214.

## IV. Lopez-Santos's Detention Pursuant to § 1226(c) Has Become Unreasonable and Due Process Affords Him an Individualized Bond Hearing.

It has long been established that due process affords a noncitizen petitioning for asylum a meaningful, fair hearing. *Maldonado-Perez v. INS*, 865 F.2d 328, 332 (D.D.C. 1989) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)). Petitioner is receiving that meaningful, fair hearing in the immigration system. But it has also been established that when a noncitizen's detention without a hearing as to his dangerousness and flight-risk during the pendency of those meaningful, fair immigration proceedings becomes unreasonable, due process demands a hearing. *German Santos*, 965 F.3d at 210. Under all the factual circumstances of this case, due process affords Lopez Santos an individualized bond hearing.

### A. Duration of detention

The first and most important factor is the duration of the detention. *Id.* The Supreme Court has found that detention of up to five or six months is not unreasonable on its face. *Demore*, 538 U.S. at 529–30. However, in an as-applied challenge, the longer the detention, the

10

more unreasonable it seems. The Supreme Court did not set a bright-line rule justifying detention under § 1226(c) after a certain number of months. Instead, it has applied a traditional due process balancing test of factors. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976) (noting that the "flexible" nature of due process is best protected by a balancing test); *Addington*, 441 U.S. 418, 425 (balancing an individual's interest "in not being involuntarily confined indefinitely" against state interests in the context of a civil commitment proceeding).

Here, Lopez Santos concedes that he is detained under § 1226(c) due to his conviction for possession of marijuana. Dkt. 1, ¶ 14. He has been detained continuously since September 20, 2019. Dkt. 48, at 4. During these eighteen months, he has been granted asylum by an immigration judge a second time (January 14, 2020), DHS has appealed the grant (February 11, 2020), and the BIA remanded the case to the immigration court for "supplemental factfinding." *Id.* at 3. This eighteen-month detention weighs heavily in Lopez Santos's favor.

**B. Likelihood of continued detention**

Second, this Court considers the likelihood of continued detention and how long that detention is likely to last. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *German Santos*, 965 F.3d at 211.

Here, an immigration judge has already granted Lopez Santos asylum—twice. The second order was based on both persecution due to his membership in a particular social group and, in the alternative, humanitarian asylum. Dkt. 48, at 3. The likelihood that he will ever receive a final order of removal is unlikely. But Respondent has reasonably conceded that the likelihood of his continued detention is high after the recent remand. *Id.* at 3 (joint stipulation that "it could be many months or years before [his] removal proceedings are resolved").

11

Additionally, in the BIA's remand order, it only addressed asylum on the basis of membership in a particular social group and not the humanitarian asylum granted in the alternative. Dkt. 48-1. As a result, Lopez Santos's hearing with the Arlington Immigration Court needs to be scheduled, and once an order is issued, DHS may very well appeal, as it has done twice before. Dkt. 48, at 4. And if appealed, once the BIA issues its decision, it might remand for a third time on the issue of the grant of humanitarian asylum. *Id.* If that isn't enough, Lopez Santos is also eligible to seek lawful permanent residency in the United States, which would mean additional detention while a hearing on the merits is scheduled and conducted. All these facts weigh heavily in Lopez Santos's favor, indicating there is a high likelihood of continued detention.

### C. Reasons for delay

Third, the court considers the reasons for delay and whether it is due to the noncitizen's request for continuances or actions of the government. *German Santos*, 965 F.3d at 211 (noting that "detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably"). In *Demore*, a "longer than average" six-month detention was deemed a reasonable length of time because the noncitizen caused the delay in asking for a continuance. *Demore*, 538 U.S. at 531.

Here, the primary reason for the delay is DHS's appeal of the successive orders granting asylum. The Court is not criticizing DHS for its decision to appeal; that's its right. Moreover, there is no evidence that the appeal was frivolous or malicious. Nevertheless, the delay factor considers which party caused the delay. The most recent DHS appeal to the BIA took thirteen months to fully brief and adjudicate. The one before that took twelve months. Dkt. 48, at 2-4. Although Petitioner requested and received a 21-day briefing extension in the second appeal, that is essentially negated by DHS's requesting and receiving a 21-day briefing extension in the first

12

appeal. *Id.* at 2-3. To be clear, this Court does not find that the government acted in bad faith; however, it is clear that the reasons for the delay here do not point to Lopez Santos. Thus, this factor also weighs in Lopez Santos's favor.

### D. Conditions of confinement

Third, this Court considers the conditions of confinement, specifically whether his civil detention in ICE custody is "meaningfully different" than criminal punishment. *German Santos*, 965 F.3d at 211 ("[I]f an alien's civil detention under § 1226(c) looks penal, that tilts the scales towards finding the detention unreasonable."). And the longer the detention, the more important this factor becomes. *Id.*

Here, Lopez Santos has been detained in county jail for the duration of his detention. He is currently housed at the McHenry County Jail in Woodstock, Illinois. This is a correctional facility that he may not leave. He cannot travel to the town square and visit the Opera House or Ned's Corner.[7] Likewise, he cannot meet a friend at Ethereal Convections for coffee, tea, and a fun-filled conversation about the issues of the day. He's in jail and not going anywhere.

Lopez Santos is housed in a unit with ICE detainees. A common wall separates the ICE detainees from others in custody, who are either awaiting trial or who have been convicted of misdemeanors. He lives in a cell that is about eight feet wide by fifteen feet long. The cell is about eighty-nine square feet and possess a window that is eighteen inches tall and seven feet long. In his cell, there are bunk beds, a bathroom area, and a small table. That being said, Lopez Santos reports having access to a gym, a common room with a television that he is free to use during the day, access to a computer and his legal materials, basic medical care, and work programs. He has access to a telephone, but the cost prohibits him from extended use; he speaks

---

[7] https://www.tripadvisor.com/LocationPhotoDirectLink-g36910-d3498719-i61796119-Woodstock_Opera_House-Woodstock_Illinois.html

with his family for about five minutes, three times a week. As an ICE detainee, Lopez Santos appears to have a few more privileges than a general population prisoner at the McHenry County Jail but the difference is not meaningful. This factor weighs in favor of a bond hearing. *See German Santos*, 965 F.3d at 213; *Hylton*, 2020 U.S. Dist. LEXIS 220506, at *9.

### E. Other facts

Finally, three other facts also weigh in favor of a bond hearing. First, as mentioned previously, Lopez Santos has asserted an apparently valid defense to removal. He has twice persuaded an immigration judge to grant him asylum, which is no easy feat. Second, Lopez Santos spent no time incarcerated for the marijuana possession, which is the crime causing his detention under § 1226(c). But he has been detained for eighteen months and is likely to be detained for at least another eighteen months. Third, marijuana possession (in what appears to be a personal use amount) is not a serious crime in 2021. Indeed, several states have legalized use and possession of personal amounts of marijuana. The Court is not condoning illegal actions, but this crime pales in comparison to other crimes in which detainees were provided bond hearings. *See, e.g.*, *Hylton*, 2020 U.S. Dist. LEXIS 220506, at *3 (third degree rape).

\*     \*     \*

Under the totality of the circumstances, Lopez Santos's detention has become unreasonable because of the eighteen-month duration of current detention, the high likelihood of continued detention for another eighteen months (at least), the lack of delay caused by him, the penal nature of his confinement, his valid defense to removal, his lengthy detention compared to the absence of incarceration for the marijuana possession, and the relatively minor criminal offense for which he is being detained. Thus, due process affords him a bond hearing at which

the government bears the burden to show by clear and convincing evidence that Lopez Santos is a danger or a flight risk.

## CONCLUSION

To be clear, the Court expresses no opinion as to the result of the bond hearing; that is an issue for the immigration judge. The record contains some troubling facts. But an experienced immigration judge who had the opportunity to see and hear Lopez Santos testify and evaluate Lopez Santos's credibility and demeanor was willing to twice grant asylum. This Court was not in the same position, being constrained by both a language barrier and court-imposed COVID-19 restrictions. The Court's holding simply recognizes that on the facts presented, the Due Process Clause of the Fifth Amendment entitles Lopez Santos to an individualized bond hearing before an immigration judge who can assess whether release pending the resolution of his removal proceedings would be appropriate.

Therefore, for the above reasons, this Court orders a bond hearing before an immigration judge within thirty days of the date of this order, at which the government must bear the burden of proof to justify Lopez Santos's continued detention by clear and convincing evidence.

Date issued:   February 19, 2021        By:   _____
                                              IAIN D. JOHNSTON
                                              United States District Judge

15